[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a marital dissolution action brought by the plaintiff, Ann L. Folan, by complaint dated May 14, 1996, seeking to dissolve the marriage as well as ancillary relief. The defendant, Kenneth Folan, and the plaintiff have appeared by counsel. All statutory stays have expired. The matter was claimed to the trial list on September 19, 1997 and heard by the court on September 23, 1999 and November 4, 1999.
Based on the evidence, the court makes the following findings of facts:
The parties were married on August 25, 1984 in Columbia, Connecticut;
The plaintiff has resided in this state for at least one year prior to the filing of the complaint;
The parties have two minor children born of the marriage: Andrew Christopher Folan, born August 8, 1989; and Nicholas James Folan, born May 5, 1992;
The plaintiff has not given birth to any other children since the marriage;
Neither party presently receives assistance from the State of Connecticut nor from any of its towns or municipalities.
The plaintiff is 38 years old. She has a master's degree from Eastern Connecticut State University.
She has been employed full time as a physical education teacher in the Hampton, Connecticut school system since 1996. She worked part-time there for ten years prior to 1996. She has also CT Page 15188 worked on a part-time basis in a local retail business to help pay bills. She is in good health.
The defendant is 37 years old. He is a co-owner, with the plaintiff, of a retail bagel shop in Norwich, Connecticut. It was purchased by the parties in early 1995. The defendant has worked there since then in a managerial capacity on a full-time basis. Prior to its purchase, he managed a retail hardware store in Vernon and a local Radio Shack franchise. He has three years of college education.
The parties own a residence known as 622 Back Road in Windham, Connecticut. They agree that its fair market value is $115,000. The first and second mortgages total $58,000.
In January 1995, the parties began to experience marital problems. The defendant complained that the residence was not clean. The plaintiff explained that she was ill. The defendant stated that her frequent illnesses proved that she had been neglected by her parents during her childhood. She was "damaged goods," he said. The plaintiff was hurt by his comments, but apologized for the condition of the home. In August 1995, another incident at the dinner table, in the presence of the children, caused the plaintiff to leave the residence with the children. She went to her parents' home in the nearby town of Columbia. The incident, which was precipitated by the defendant's objection to the dinner selection made by the plaintiff, included a threat by the defendant to punch the plaintiff in the face. She and the children returned to the residence the following day in part because of an agreement struck by the parties to attend counseling.
The parties began to see Candace Powers, a psychotherapist, in September of 1995. She saw the parties several times together and individually between September and May of 1996. Between visits, the parties continued to argue. The defendant's anger and threats of violence escalated. He would accept no responsibility for the problems the parties were experiencing. He accused the plaintiff of having an affair. He accused the plaintiff of being homosexual. In January of 1996, the couple separated. The defendant went to the residence of the plaintiff's parents and lived with them until April of 1996. On Good Friday of that year, the police were called to the home because the defendant's conduct was a concern to the members of the plaintiff's family. He was depressed, agitated, loud and angry. He threatened to take CT Page 15189 the children with him and never return. The police tried to calm him down but he resisted their efforts to transport him to a hospital for medical attention. He was subdued and taken for treatment to a local hospital and later transported to a psychiatric hospital. He was released the following Monday and returned to the family residence.
At a counseling session with the plaintiff and Candace Powers in early May of 1996, the defendant became angry and violent in their presence when told of his wife's intention to seek a divorce. He struck the table forcefully and shouted threats. He was asked to leave the room and refused. He followed the plaintiff and Powers to another room and continued to berate them. Frightened, they sought police intervention, after which the parties separated permanently and a restraining order issued which prohibited the defendant from entering the family residence. This action was brought in May of 1996. The children continued to reside with the plaintiff in the family residence.
Notwithstanding the problems with their marriage, which had begun to surface in early 1995, the parties, in May of 1995, purchased a bagel shop in Norwich, Connecticut for the sum of $175,000. They incorporated for that purpose under the name of Folan Sons, Inc. and each of the parties own 50 percent of the stock of the corporation. The former owner, Panda Systems, Inc., provided financing in the amount of $130,000. Monthly payments are $1900. About $80,000 to $95,000 remains to be paid. The loan is in the name of the corporation. The parties are personal guarantors of the loan. The balance of the purchase price was financed through the Savings Bank of Manchester and is secured by a third mortgage on the residence. Its present balance is approximately $3,000.
The business has been managed by the defendant on a day-today basis. The plaintiff's role has been limited. She has been the bookkeeper solely in the sense that she has written the checks to the suppliers as required. Because of her teaching position, she has almost never worked on the premises.
In the past few years, the volume of business has declined. It has dropped from $402,000 in 1996 to $338,000 in 1998. This decline is due to increased competition in the bagel business, primarily from large chains like Dunkin Donuts and Bess Eaton. The defendant's weekly salary has been lowered from $675 in 1995 to $350 currently. CT Page 15190
The plaintiff earns $780 weekly. She has a teacher's retirement plan with a current account balance of approximately $25,000. She has some social security entitlement from a series of part-time jobs.
The parties are at odds regarding property settlement issues, i.e., the disposition of the equity in the home, the business, and the plaintiff's pension. Further, the amount of child support to be paid by the defendant is disputed. They are in agreement regarding custody of and access to the children.
After hearing the testimony, the court concludes the marriage has broken down irretrievably and that the defendant is primarily responsible for the breakdown. A separation has existed for three and one-half years. There is no reasonable likelihood of reconciliation. The marriage should be dissolved. The court, being mindful of the provisions of Chapter 815j of the General Statutes, particularly §§ 46b-81, 46b-82, 46b-87, and relevant case law, finds the following orders to be fair and equitable:
1. The marriage of the parties is dissolved on the ground of an irretrievable breakdown;
2. Neither party is awarded alimony;
3. By way of property settlement, the defendant shall quit-claim his interest in the Back Road premises to the plaintiff subject to the existing first and second mortgages, which the plaintiff shall pay and save the defendant harmless from any claims arising therefrom. The third mortgage, in favor of the Savings Bank of Manchester, in the approximate amount of $3,000, is to be paid by the defendant from income from the family business.
When the youngest child is 18 or graduates from high school, whichever is later, or when the plaintiff remarries or cohabits with an unrelated person for more than sixty days, or when she no longer uses the home as her residence, or when she refinances or sells, then she shall, within sixty days of such event, pay the sum of $15,000 to the defendant.
The plaintiff shall transfer her shares of Folan and Sons, Inc., the family business, to the defendant subject to the unsecured debt to Panda Systems, Inc., and the defendant shall CT Page 15191 pay this debt and save the plaintiff harmless from any claims arising therefrom. The transfer of stock is also subject to the secured debt to the Savings Bank of Manchester previously referred to herein. The defendant shall save the plaintiff harmless from any claims arising therefrom.
4a. The parties shall have joint custody of the minor children in accordance with the recommendations of the family relations counselor found in her report dated June 7, 1999, which shall become orders of the court. They are as follows:
Legal custody of Andrew and Nicholas shall be joint between the parents with plaintiff assuming primary residential status until the summer of 2000, and subsequently plaintiff to retain primary residence during the school year and the defendant to assume primary residence each summer thereafter.
The parents shall alternate weekend access year round with defendant exercising liberal midweek access as mutually agreed, to include overnights during summers and school vacations when his work schedule permits.
It is understood that plaintiff will provide daytime care of the children when her work schedule permits and defendant's does not.
Holidays shall be shared through mutual agreement such that the children may celebrate with both parents and extended families.
Both parents shall provide each other sixty days' notice of intention to relocate.
Both parents are to share in decisions regarding the childrens' education, extracurricular activities, and health.
4b. The defendant shall pay to the plaintiff the sum of $95 weekly as child support consistent with the child support guidelines. This sum shall be secured by contingent wage execution so long as defendant is self-employed. Support payments shall be suspended for those weeks during the summer when the children are with the defendant.
4c. The plaintiff shall cover the minor children with health insurance as available though her employment at a reasonable CT Page 15192 cost. The defendant shall pay 22 percent of the unreimbursed medical, dental, orthodontic, ophthalmologic, psychological, and pharmaceutical expenses of the children, consistent with the support guidelines.
The defendant may, at his expense, maintain health insurance through the plaintiff's employment as permitted by federal (COBRA) and/or state law.
5. The plaintiff shall have the minor children as federal and state tax exemptions.
6. The plaintiff will keep her retirement plan in the Connecticut Teachers' Retirement System.
7. The personal property described in defendant's Exhibit 2 shall be divided as follows: Those items identified by red check marks shall be turned over to the defendant forthwith; the family photo albums and the antique sports collection shall be divided by mutual agreement of the parties.
8. No order of counsel fees is entered.
9. With the exception of specific orders to the contrary herein, each party shall be entitled to the ownership of the assets and shall be responsible for the payment of the liabilities shown on his or her proposed orders or financial affidavits and shall hold the other harmless from any liabilities set forth therein or any liabilities in connection with the assets.
10. The court shall retain jurisdiction to enter such orders as may be necessary in order to effectuate the provisions of the judgment.
11. The plaintiff shall prepare the judgment file.
Potter, J.